UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CIV-21606-MORENO
MAGISTRATE JUDGE P.A. WHITE

MAURICIO OBANDO,                    :

    Petitioner,                 :

v.                                  :        <u>REPORT OF</u>
                                             <u>MAGISTRATE JUDGE</u>
JULIE JONES,                        :

    Respondent.                 :
_____

## <u>Introduction</u>

Mauricio Obando, who is presently confined at Santa Rosa Correctional Institution in Milton, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his convictions and sentences in case numbers F05-4402C, F05-6478, F05-6482, F05-8370, F05-7562 and F05-103462, entered in the Eleventh Judicial Circuit Court of Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The court has before it the petition for writ of habeas corpus (DE#1), Respondent's response to an order to show cause and appendix of exhibits (DE##13, 18), Petitioner's reply (DE#15), and Respondent's supplemental response to the order to show cause (DE#24).

## <u>Claims</u>

<u>Ground One:</u>            Ineffective assistance of counsel, failing to investigate petitioner mental health history. In violation of the Fifth, Sixth, and Fourteenth Amendment United States Constitution and the Florida Constitutions.

1

<u>Ground Two:</u>  Trial court error at sentencing hearing for allowing petitioner to enter state negotiate plea as Habitual Violent Felony Offender this is a violation to petitioner "due process"; Sixth and Fourteenth Amendments of the United States Constitution, and the Florida Constitution.

<u>Ground Three:</u>  Ineffective assistance of counsel, "denial of due process', for allowing petitioner to receive legally insufficient / unlawful sentence enhancement of section (775.084(3)(a) Habitual Violent Felony Offender). In violation of petitioner Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

<u>Ground Four:</u>  Denial of due process were petitioner received legally insufficient/unlawful sentence, were state never provided written notice of its actual intention to seek an Habitual Violent Felony Offender sentence. State is in violation of petitioner "due process", Sixth and Fourteenth Amendment of The United States Constitution and the Florida Constitutions.

<u>Ground Five:</u>  Involuntary Plea due to counsel misadvising petitioner to plea "guilty on all counts" petitioner "due process", Sixth and Fourteenth Amendment of the United States Constitution and the Florida Constitutions.

<u>Ground Six:</u>  Lack of jurisdiction of the trial court to enter judgement without considering whether petitioner should have been classified as a "youthful offender" under (§958 .04

(2) Florida Statues (1981). In violation of petitioner "due process"; Sixth and Fourteenth Amendment of The United States Constitution and Florida Constitutions.

Ground Seven:    Lack of jurisdiction on the trial court to enter the judgement and sentence without first conducting a "D.N.A." Evidence inquiry before accepting petitioner plea as guilty (Under Fla. R. Crim. P. Rule 3.172). In violation of petitioner "due process"; Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

Ground Eight:    Petitioner sentence is illegal "denial of due process"; Illegal enhancement of section (§ 775.087(1)) and under (17112 West's F.S.A. STD. CRIM. JURY. INSTR. 15.1) and section (§ 813.13 FLA. STAT.) State is in violation of petitioner "due process", his Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

Ground Nine:    Petitioner was denied the right to appellate counsel. Sixth and Fourteenth Amendment of the United States Constitution and the parallel authority of Article I § 9 and article II § 16 of the Florida Constitution, guarantee indigent petitioner's in a criminal prosecution the right to appointed counsel on his criminal trial and first appeal as of right.

Ground Ten:    The denial of effect assistance counsel, counsel was ineffective for failing to protect the petitioner's right to "due process" of law under Sixth and; Fifth and Fourteenth

Amendment of the United States Constitution and Florida Constitutions.

Ground Eleven:    Counsel was ineffective for failing/abandoning the petitioner previously filed motions to suppress statements illegally obtained, and motion to suppress identification testimony. In violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

Ground Twelve:    Counsel was ineffective for failing to subject the state's case to meaningful adversarial testing process, which rendered petitioner plea involuntary, in violation of Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

Ground Thirteen:    Counsel was ineffective for failing to file a motion to withdraw the petitioner plea, in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

Ground Fourteen:    Counsel was ineffective for advising the petitioner to accept the state's negotiated plea offer on case number F05-6482, in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions.

Ground Fifteen:    Trial court was without jurisdiction for entering judgment and sentence without at first ordering a Nelson hearing, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the Florida Constitution.

4

Ground Sixteen:      Ineffective assistance of counsel, due to counsel's failure to provide the petitioner with Discovery and depositions, in violation of petitioner's due process, his Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the Florida Constitution.

Ground Seventeen:    The cumulative effect of counsel's numerous errors has deprived the petitioner of his due process rights to effective assistance of counsel. In violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the Florida Constitution.

It is well settled that pro se pleadings seeking habeas relief are to be liberally construed, and are held to less stringent pleading requirements than those drafted by attorneys. See Williams v. Griswald, 743 F.2d 1533, 1542 (11th Cir. 1984); Gunn v. Newsome, 881 F.2d 949, 961 (11th Cir. 1989). "Precedent also teaches, however, that a court, of course, should not abandon its neutral role and begin creating arguments for a party, even an unrepresented one." Sims v. Hastings, 375 F.Supp.2d 715, 718 (N.D.Ill.2005)(citing Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001)). A district court may not rewrite a petition to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Petitioner's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417–18 (7th Cir.1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Neuendorf v. Graves, 110 F.Supp.2d 1144, 1151 (N.D.Iowa 2000)(although district court must liberally construe a pro se petition for federal habeas relief, it is not required to recognize an unarticulated arguments)(citing Miller v. Kemna, 207 F.3d 1096, 1097 (8th Cir. 2000)); Burkey v. Deeds, 825 F.Supp. 190,

193 (D.Nev.1993)(the leniency granted to the interpretation of <u>pro se</u> pleadings "should not place on the reviewing court the entire onus of creating a federal claim for the petitioner"). When read liberally, rather, a <u>pro se</u> habeas petition "should be interpreted 'to raise the strongest arguments that [it] suggest[s].'" <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2nd Cir. 1996)(*quoting* <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2nd Cir. 1994). A habeas petitioner must still present claims in clear and simple language, such that the district court may not misunderstand it. <u>Dupree v. Warden</u>, 715 F.3d 1295, 1299 (11th Cir. 2013)(*quoting* <u>Smith v. Sec'y, Dep't of Corr.</u>, 572 F.3d 1327, 1352 (11th Cir. 2009).

In keeping with these principles, the leniency afforded to <u>pro se</u> litigants does not excuse them from complying with the court's basic pleading requirements, even on federal habeas review. <u>See Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1061 (11th Cir. 2011). As the Eleventh Circuit has explicitly stated, the district courts cannot be expected to do a habeas petitioner's work for him. <u>Id.</u> Federal district courts are not obligated to cull the evidentiary records themselves, nor to ferret out delectable facts for a habeas petitioner. <u>Id.</u> (internal quotations and citations omitted). Even when a party is proceeding <u>pro se</u>, a court is not required to "accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." <u>Campos v. Immigration & Naturalization Serv.</u>, 32 F.Supp.2d 1337, 1343 (S.D.Fla.1998)(citations omitted). Moreover, a <u>pro se</u> litigant's statement of the grounds for relief "requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007). Federal courts are thus not bound by the label that a <u>pro se</u> petitioner attaches to his claim, and should liberally construe and address claims according to the substantive nature of what is

alleged or sought. See Gonzalez v. Crosby, 545 U.S. 524, 531 (2005)(a pleading labeled as a Rule 60(b) motion that is in substance a successive habeas petition should be treated as such).

Finally, the leniency afforded to pro se litigants does not permit them to file an impermissible "shotgun" pleading.  The typical shotgun pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).  The term also refers to pleadings that are "replete with factual allegations and rambling legal conclusions." Osahar v. U.S. Postal Service, 297 F. App'x 863, 864 (11th Cir. 2008).  The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil docket." PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 n. 4 (11th Cir. 2010).  Indeed, shotgun pleadings require the court to sift through rambling and often incomprehensible allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." Id. (citation omitted).  The Eleventh Circuit thus has established that shotgun pleading is an unacceptable form of establishing a claim for relief.  Strategic Income Fund, 305 F.3d at 1296.

Here, various portions of Petitioner's petition amount in large part to an impermissible "shotgun" pleading.  Moreover, many of Petitioner's grounds for relief contain little more than labels and legal conclusions.  The court thus liberally construes Petitioner's claims according to their substantive nature, and in the manner which raises the strongest possible arguments that his allegations suggest.  See Gonzalez, 545 U.S. at 531 (pleadings

should be treated according to their substantive nature); <u>Graham</u>, 89 F.3d at 79 (a <u>pro</u> <u>se</u> habeas petitions should be interpreted to raise strongest arguments that they suggest).

<u>Procedural and Factual Background</u>[1]

Petitioner was charged in multiple cases with various violent felonies including, among other things, numerous counts of armed robbery. On April 16, 2008, Petitioner entered a global plea. The transcript of the plea colloquy reflects the following (DE#13, Exh.N):

At the inception of the hearing, counsel announced that Petitioner would be accepting a negotiated plea offer. The State then announced that Petitioner would be sentenced as a habitual violent felony offender to 20 years in state prison, with a 10-year mandatory minimum, followed by five years probation.[2] The court asked Petitioner if that was what Petitioner wanted to do (<u>Id.</u> at 5). Petitioner said that it was (<u>Id.</u>). The court then began to place Petitioner under oath (<u>Id.</u>). At that point, Petitioner interjected that he had filed some <u>pro</u> <u>se</u> motions, to which he had not received any response (<u>Id.</u>). The court acknowledged that two of those motions requested that counsel be discharged on the basis of alleged incompetence, and told Petitioner that it would consider his concerns if they were still an issue (<u>See</u> <u>Id.</u> at 5-7; <u>see also</u>

---

[1]The procedural history of Petitioner's six underlying criminal cases is set forth in the court's Order for Supplemental Response (DE#21), and is incorporated herein by reference. That order contains the federal limitations analysis, and concludes that, with the exception of the claims that relate to case number F05-4402C, Petitioner's claims are time barred (<u>Id.</u>). That limitations analysis is also incorporated herein by reference. The court thus sets forth here only the procedural and factual background necessary to resolution of Petitioner's claims that relate to case number F05-4402C.

[2]It is undisputed that these were the terms of the plea offer.

DE#13, Exh.P, motions to conduct a "Nelson" hearing[3]).  Before the court proceeded, counsel told the court that Petitioner had filed a motion to suppress statements, so "in an abundance of caution I filed a motion to suppress the photo lineup" (Id. at 6).

The court then explained to Petitioner that:

> the . . . law is if he does the depositions, if he prepares the case for trial, if he talks to the witnesses, if he does a reasonable investigation on your behalf, and if he at least informs you as to what is happening on some occasions, he doesn't have to go out there and hold your hand every week.  He doesn't have to go talk to you everyday.  He doesn't have to take all your telephone calls.  He has to give you at least a reasonable understanding of what is happening.  And we found out today, in fact, that your brother yesterday agreed to become a witness, okay.  So that is what it is, okay.  So now you can if you want to go forward and tell me what you feel that he hasn't done on your behalf, I will be happy to do that . . . You have wrote [sic] me several letters concerning what you felt that he wasn't doing for you.  Is there anything as we sit here today that, you know, you want to tell me about Mr. Encinosa? He has filed motions concerning your motion to suppress. I think that he has given you reasonable representation. And again, you wrote me in general so you have to tell me what he is not doing that he is legally supposed to do and then we could go forward. Is there anything?

(Id. at 7-8).

In response, Petitioner stated to the court that his sole basis of dissatisfaction was that the case had been pending for two years, and that he "just happened to see [counsel] about a month ago at the end . . . it is like, basically I ain't never had no paperwork until just recently that he came and showed me at the

---

[3]Florida law requires that, when a defendant seeks to discharge counsel based on alleged incompetency, the trial judge must determine whether there is reasonable cause to believe that court-appointed counsel is rendering ineffective assistance. Weaver v. State, 894 So.2d 178 (Fla. 2004)(citing Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).  Prior to entering his plea, Petitioner twice submitted a motion to the trial court for a Nelson hearing (DE#13, Exh.P; see also DE#13, Exh.N., p.6).

last moment" (<u>Id.</u> at 8).  Petitioner further stated that he wanted to know if he could have his own copies of "everything that is being said and everything like in court, like copies of the transcripts and all my depos and discovery and everything because . . . I would like to have a copy of all my paperwork concerning me (<u>Id.</u> at 9).

Counsel stated to the court that he had met with Petitioner once or twice "a while back," and two times in the week preceding the plea (<u>Id.</u>).  Counsel further stated that he had provided Petitioner with the depositions, and left them with him to review. Counsel also reviewed tape-recorded statements that the state would be attempting to introduce at trial, and did legal research in order to oppose that motion (<u>Id.</u>).  Finally, counsel indicated that he could turn over the entire physical file to Petitioner if Petitioner wanted it, but that he could not do that until the matter was over (<u>Id.</u>).

Petitioner acknowledged that he had in fact reviewed all of the depositions (<u>Id.</u>).  The court then asked Petitioner "You now understand what the case is against you, good, bad or indifferent, you have an idea what these witnesses are going to say, right?" (<u>Id.</u>).  Petitioner acknowledged that he did have that understanding (<u>Id.</u>).  Petitioner further acknowledged that he spoke to counsel about the motions that counsel had filed, and that counsel had explained those as well (<u>Id.</u> at 10).

After this discussion, Petitioner told the court that he was nevertheless still dissatisfied (<u>Id.</u>).  The court told Petitioner that counsel had "done legally what he was required to do," and that it was denying Petitioner's motion to have counsel discharged (<u>Id.</u>).  The court then told Petitioner "[i]f you don't want to take the plea, that is up to you[,]" to which Petitioner responded "I will take it" (<u>Id.</u>).  The court nevertheless discussed the matter further with Petitioner, as follows:

> I am not here to tell you that it is a good deal or a bad deal.  I know what he has done on your behalf.  I think that he has met the requirements of <u>Nelson</u>, so I will deny that motion.  If you want to fire him and represent yourself and go to trial on your own or hire your own attorney, that is up to you, sir, but any one of these cases, I am told by the state if you are found guilty you are looking at mandatory life in the state penitentiary. State made you an offer.  You told me that you decided to accept it.  Is that still correct, sir?

(<u>Id.</u>).  And Petitioner stated that he still wanted to take the plea (<u>Id.</u>).

The court thus noted that Petitioner had been previously sworn in, and began the plea colloquy (<u>Id.</u> at 11, *et seq.*).  Petitioner stated that he was 24, had completed the ninth grade, and was not under the influence of any drugs or alcohol (<u>Id.</u>).  Petitioner further stated that he was not suffering from any mental disease or disorder, that he had never been diagnosed with any mental condition which would effect his ability to understand the proceedings, that he was not taking any medication, and that he understood everything that was going on (<u>Id.</u>).  The court then set forth the terms of the plea offer, which Petitioner stated that he understood (<u>Id.</u>).  With that understanding, Petitioner again stated that he wanted to accept the plea offer (<u>Id.</u>).

Petitioner then stated that no one had forced him to take the plea (<u>Id.</u>).  He further stated that no on had made any promises to him other than those contained in the offer and discussed on the record (<u>Id.</u>).  Moreover, Petitioner acknowledged that he understood that being sentenced as a habitual violent felony offender would preclude him from earning gain time on his 10-year mandatory minimum sentence, and could effect his entitlement to it on the remaining 10 years after that (<u>Id.</u>).  Petitioner then stated that, even with that understanding, he still wanted to take the plea (<u>Id.</u>).

Petitioner also acknowledged that, despite his dissatisfaction with counsel, he had in fact had the ability to discuss the case and the plea with counsel (Id.). Petitioner specifically stated that he and counsel had discussed all potential witnesses that might have been called to testify on his behalf (Id.). Petitioner further stated that he had discussed any and all potential defenses that might have existed with counsel (Id.). Petitioner again stated that he was still dissatisfied with counsel, but again also stated that he still wanted to take the plea (Id.).

The court then asked Petitioner if he understood that, by pleading guilty, he was giving up his right to appeal any decisions the court had made, including the court's decision not to discharge counsel (Id.). Petitioner stated that he did (Id.). Petitioner then stated that, with that understanding, he still wanted to plead guilty (Id.). Petitioner further stated that he understood that, by pleading guilty, he was admitting his guilt to the crimes, including those that involved possession of a firearm (Id.). Petitioner then admitted that he did in fact commit those crimes (Id.). Petitioner then stated that he understood that it was that admission with regard to the firearms that was subjecting him to the mandatory minimum he was agreeing to be sentenced to under state law (Id.).

Petitioner also stated that he understood that, by pleading guilty, he was giving up the right to remain silent, and the right to cross-examine witnesses (Id.). He then stated again that he understood he was also giving up the right to appeal the trial court's decisions (Id.). Petitioner then confirmed that he also understood that, because he was pleading guilty, counsel would not be filing any other motions challenging the case on Petitioner's behalf (Id.). Petitioner also admitted that he did in fact have the requisite prior conviction that qualified him as a habitual violent felony under state law (Id.).

12

Finally, the court asked Petitioner if he understood that, if he violated the terms of his probation or committed any other crimes after being released from prison, he would be looking at life (Id.). Petitioner stated that he did (Id.). Petitioner then stated that, knowing that and knowing everything that had been discussed, he still wanted to plead guilty (Id.). Petitioner further stated that he understood that he was giving up the right to present any DNA evidence that might have exonerated him, because he was admitting his guilt (Id.). The court further advised Petitioner that the cases to which he was pleading guilty would count against him for future enhancement purposes, that he was already a habitual violent felony offender under state law, that he could be a "three strikes" offender, or that he could have some other designation depending on future crimes (Id.). The court asked Petitioner if he understood that, and Petitioner replied "Yes, sir. Yes, sir." The court then asked Petitioner if he also understood that restitution would be imposed upon him, and Petitioner stated that he still wanted to plead guilty with that understanding (Id.).

At the conclusion of the colloquy, the court found Petitioner to be alert and intelligent, and found that Petitioner understood the nature and consequences of his plea (Id.). The court also found that, despite Petitioner's reservations, counsel had done more than what was required to prepare the case for trial (Id.). The court further found that Petitioner qualified as a habitual violent felony offender pursuant to state law, based on Petitioner's admissions regarding his criminal history during the plea colloquy (Id.). In addition, the court found that the Informations were sufficient to state *prima facie* cases of guilt against Petitioner (Id.). The court thus accepted Petitioner's guilty plea, adjudicated Petitioner guilty, and sentenced him to

the negotiated term of 20 years in prison, with the 10-year mandatory minimum, followed by 5 years of probation.

<u>Threshold Issues - Exhaustion and Procedural Bars</u>[4]

It is well-settled that a state prisoner must exhaust his state remedies prior to challenging his conviction in a habeas petition filed in federal court. <u>See</u> 28 U.S.C. §2254(b),(c); <u>see also</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). State prisoners are therefore required to first "present the state courts with the same claim [they urge] upon the federal courts" prior to seeking relief on federal habeas review. <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971). When a state allows review of a constitutional violation either on direct appeal or by collateral attack, a prisoner need only exhaust one avenue before seeking habeas corpus relief. <u>Turner v. Compoy</u>, 827 F.2d 526, 529 (9th Cir. 1987). A state prisoner thus satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>O'Sullivan</u>, 526 U.S. at 845.

The exhaustion requirement is also satisfied when a federal claim has not been presented (or fairly presented) to the state court, but it is clear that the claim would be prospectively procedurally barred under state law. <u>Gray v. Netherland</u>, 518 U.S. 152, 161-63 (1996)(citations omitted). This is because, in such a case, the petitioner no longer has a state-court remedy available within the meaning of §2255(b).[5] <u>Id.</u> In keeping with the same

_____

[4]As previously noted, the court's limitations analysis and conclusions regarding the timeliness of Petitioner's claims are set forth in the court's Order for Supplemental Response (DE#21), and are incorporated herein by reference.

[5]These claims will thus be deemed procedurally defaulted by the federal courts, since the state courts would find them to be procedurally barred under state law. <u>See</u> <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008); <u>Collier v. Jones</u>, 910 F.2d 770, 773 (11th Cir. 1984).

rationale, the exhaustion requirement is further satisfied when a federal claim has in fact been presented to the state courts, but explicitly rejected on state procedural grounds. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991). In both instances, however, the state procedural bar that gives rise to exhaustion may also provide an independent and adequate state-law ground for the conviction and sentence, and thereby preclude federal review of the procedurally defaulted claim. <u>See Gray</u>, 518 U.S. at 161-62; <u>Coleman</u>, 501 U.S. at 729 n. 1, 730-31.

Here, with the exception of <u>Ground Eight</u>, Respondent concedes that all of Petitioner's claims are properly exhausted. Respondent acknowledges that Petitioner raised <u>Ground Eight</u> in his second 3.850 motion (DE#24, p.45). Respondent similarly acknowledges that Petitioner raised grounds <u>Two</u>, <u>Six</u>, and <u>Seven</u> in his second 3.850 motion and, with regard to those claims, further concedes that they are thereby properly exhausted (<u>Id.</u> at pp.17, 41 & 43). Respondent's failure to include an express concession that <u>Ground Eight</u> is similarly properly exhausted thus appears to be an oversight.

Regardless, even if there were some basis to conclude that <u>Ground Eight</u> was not technically exhausted (which there is not), §2254(b)(2) permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims.[6] <u>See Johnson v. Scully</u>, 967 F.Supp. 113 (S.D.N.Y. 1996); <u>Walker v. Miller</u>, 959 F.Supp. 638 (S.D.N.Y. 1997; <u>Duarte v. Miller</u>, 947 F.Supp. 146 (D.N.J. 1996). If it is "perfectly clear" that the Petitioner has failed to state "even a colorable federal claim," the competing policy considerations underlying the exhaustion requirement are

---

[6]28 U.S.C. §2254(b)(2) provides:

> (b)(2) (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

15

best served by the district court denying the petition on the merits.  See Granberry v. Greer, 481 U.S. 129, 134-35, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); see also Atkins v. Singletary, 965 F.2d 952, 957 (11th Cir. 1992)(applying Granberry).[7]

Here, it is perfectly clear that Petitioner has failed to state even a colorable federal claim in Ground Eight.  This claim may thus properly be resolved on the merits, regardless of whether it was exhausted in state court or not.  See 28 U.S.C. §2254(b)(2).[8]

Respondent nevertheless argues that the vast majority of Petitioner's claims are procedurally barred.  This Court acknowledges that threshold issues should ordinarily be resolved first.  However, judicial economy sometimes dictates reaching the merits, if the threshold issues are complicated, and the case is otherwise easily resolvable against the defendant on the merits. See Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999)(stating

---

[7]The Court recognizes that § 2254(b)(3) overrules Granberry to the extent that the state no longer may be deemed to waive the exhaustion requirement. The quoted passage, however, remains good law.  Indeed, the policies underlying it are directly incorporated into §2254(b)(2).

[8]Unexhausted claims are reviewed de novo.  See Cone v. Bell, 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)(were state courts do not reach merits of claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to "any claim that was adjudicated on the merits in State court proceedings" under 28 U.S.C. § 2254(d)(citing Rompilla v. Bearch, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)(de novo review where state courts did not reach prejudice prong under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(same).  However, 2254(e)(1) requires district courts to presume that a state court's factual determinations are correct, unless the habeas petitioner rebuts the presumption of correctness with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); see also, e.g., Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001)(observing that § 2254(e)(1) provides "a highly deferential standard of review for factual determinations made by a state court").  The deference and presumption of correctness that attends state-court findings of fact pursuant to §2254(e)(1) applies even when the habeas claim is being examined de novo.  See Mansfield v. Sec'y, Fla. Dep't of Corr., 679 F.3d 1301, 1313 (11th Cir. 2012)(acknowledging the federal court's obligation to accept a state court's factual findings as correct, if unrebutted by clear and convincing evidence, and proceeding to conduct a de novo review of the habeas claim).

that judicial economy sometimes dictates reaching the merits, if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); see also Lambrix v. Singletary, 520 U.S. 518, 525 (1997); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.").

Here, Petitioner raised many of his claims at different junctures in his various state court proceedings. However, Respondent's procedural arguments are largely nonsensical and of little use in determining which claims may actually be procedurally barred.[9]  Moreover, with the exception of Ground Nine, which Respondent properly does not contend is procedurally barred,[10] the merits of Petitioner's remaining claims are easily resolvable against him.   Judicial economy thus dictates that Petitioner's remaining claims that are easily resolvable against him also be addressed on the merits.

Applicable Standards

*General Standard of Review*

---

[9]For example, Respondent argues that various grounds of the instant federal petition, which Respondent states were resolved in either Petitioner's direct appeal or in his first 3.850 proceeding, are "procedurally barred as successive as [they] were ruled on by the merits [sic] in State court [and are therefore] not cognizable on appeal" (DE#24, pp.52-56, 72; see also DE#13 & 18, Exh.R-II (records relating to Petitioner's direct appeal and first 3.850 motion)). Respondent then cites a case that stands for the proposition that claims that were raised or could have been raised in direct appeals or in prior post-conviction proceedings under state law cannot be raised in a subsequent state habeas proceeding.  Id. (citing Gayle v. State, 114 So.3d 179 (Fla. 2012)).

[10]In Ground Nine, Petitioner claims that he was denied counsel in his direct appeal.  As detailed in Respondent's original response to this court's order to show cause, Petitioner raised this claim in his state habeas proceeding, and it was denied on the merits (DE#13, pp.22-23; see also www.3dca.flcourts.org, case no. 3D12-2457).  And although Respondent has not actually filed Petitioner's state habeas petition with its appendix of exhibits (See DE#18, Exh.FF (missing)), review of Petitioner's Motion for Rehearing and Request for Written Opinion reveals that Petitioner did in fact raise his claim of denial of appellate counsel in his state habeas proceeding (DE#18, Exh.HH).

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001). A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. A federal court must presume the correctness of the state court's factual findings, unless the petitioner overcomes them by clear and convincing evidence. See, 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. See Early v. Packer, 537 U.S. 3, 8 (2002).

*Standard for Claims of Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate both (1) that his counsel's performance was deficient, and (2) that he suffered prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "To establish deficient performance, a defendant must show that his counsel's representation fell below

an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1356 (11th Cir. 2009). Reasonableness is assessed objectively, measured under prevailing professional norms, and includes a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time. Strickland, 466 U.S. at 689. The standard to be applied is that of a reasonable attorney, not a "paragon of the bar." Hannon v. Sec'y, Dep't of Corr., 562 F.3d 1146, 1151 (11th Cir. 2009). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992).

The court's role in applying Strickland's first prong is thus not to "grade a lawyer's performance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002)(quoting, Strickland, 466 U.S. at 690). Instead, the court determines "only whether a lawyer's performance was within "the wide range of professionally competent assistance." Id. Review of counsel's conduct is to be highly deferential in this regard. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). When assessing a lawyer's performance, courts "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). Courts should thus start with the presumption of effectiveness, and should always avoid second-guessing an attorney's performance with the benefit hindsight. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992); see also Williams v. Head, 185 F.3d 1223, 1236 (11th Cir. 1999)("'[I]n retrospect, one may always identify shortcomings,' but

19

perfection is not the standard of effective assistance.")(quoting, Cape v. Francis, 741 F.2d 1287, 1302 (11th Cir.1984)).

With regard to Strickland's second prong, the defendant must do more than simply show that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Rather, to demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Prejudice is thus established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. Lockart v. Hill, 506 U.S. 364 (1993). Indeed, as the Supreme Court has indicated, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Finally, it is beyond dispute that, unless a defendant satisfies both prongs of the Strickland inquiry, relief should be denied. Strickland, 466 U.S. at 687. A court thus need not address both components of the inquiry if the defendant makes an insufficient showing on one. Id. at 697. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. Id. at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000). And where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697; see, also, Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995)(A court "may decline to reach the performance prong of the ineffective assistance test if convinced that the

prejudice prong cannot be satisfied.")(<u>citing</u> <u>Strickland</u>, 466 U.S. at 697).

*Standard of Review for State Decisions Applying <u>Strickland</u>*

As previously noted, a prisoner in state custody may not be granted a writ of habeas corpus unless the state court decision at issue is in conflict with clearly established federal law, or based on an unreasonable determination of the facts.   28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 405-06.   A federal court's role on habeas review of a state court decision on a claim of ineffective assistance of counsel is thus not to apply <u>Strickland</u>, but to determine whether the state court applied <u>Strickland</u> an objectively unreasonable manner.   <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002)(to obtain habeas relief on a claim of ineffective assistance of counsel, a state prisoner must show that show that the state court applied <u>Strickland</u> an objectively unreasonable manner).   The relevant question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect[,] but whether that determination was unreasonable--a substantially higher threshold." <u>Knowles v. Mirzayance</u>, --- U.S. ----, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)(internal quotation marks omitted).   A "doubly deferential" standard of judicial review therefore applies to a Strickland claim evaluated under §2254(d)(1).   <u>Id.</u> at 1418 (noting that "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); <u>see</u> <u>also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004)("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference-this one to a state court's decision-when we are considering whether to grant federal habeas relief from a state court's decision.").

Discussion

Many of the allegations Petitioner makes in support of his claims challenge the knowing and voluntary nature of his plea. Because resolution of Petitioner's claim that his guilty plea was unknowing and involuntary could potentially moot some of Petitioner's other claims for relief, the court addresses Petitioner's claim that his plea was unknowing and involuntary first.[11]

*Petitioner's Claims Challenging the Knowing and Voluntary Nature of his Plea*[12]

In support of <u>Ground Three</u>, Petitioner alleges that counsel allowed Petitioner to accept the state's plea offer without first advising Petitioner that he would be habitualized. In support of <u>Ground Five</u>, Petitioner alleges that he never had an "ample" opportunity to discuss his case with counsel, that he never received intelligent advice, that counsel never mentioned the habitual violent felony offender status of "10-20-life," and that he was induced and misled into pleading guilty by counsel's misadvice. In support of <u>Ground Seven</u>, Petitioner alleges that the

---

[11]The traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and with the benefit of competent counsel waives all non-jurisdictional defects up to that point in the proceedings. <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973)(noting that a guilty plea represents a break in the chain of events which had preceded it in the criminal process). The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. <u>See Bradbury v. Wainwright</u>, 658 F.2d 1083, 1087 (5th Cir. 1981), cert. denied, 456 U.S. 992 (1982); <u>see also United States v. Bohn</u>, 956 F.2d 208, 209 (9th Cir. 1992)(per curiam)(holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all, which is not applicable to this case. <u>See United States v. Broce</u>, 488 U.S. 563, 574-575 (1989). The court notes, however, that to the extent that Petitioner appears to attack the knowing and voluntary nature of his plea based on counsel's alleged pretrial errors, those claims are effectively being addressed.

[12]To the extent that these grounds for relief raise claims in addition to challenging the knowing and voluntary nature of Petitioner's plea, those claims will be addressed below in the discussion of Petitioner's grounds for relief as set forth in the petition.

trial court erred in accepting his guilty plea, without first conducting a DNA evidence inquiry.[13]  In support of Ground Ten, Petitioner alleges that counsel was ineffective in failing to advise him that his prosecution on the two counts alleged in case number F05-4402C violated double jeopardy and that, but for that failure to advise, Petitioner would have proceeded to trial.  In support of Ground Twelve, Petitioner alleges that counsel never communicated with Petitioner in any material aspect, never provided Petitioner with any discovery related to numerous cases, never discussed any case strategy with Petitioner, and never interviewed Petitioner or any of the alleged victims.  Petitioner further alleges that he never knew the extent of the facts and evidence surrounding his cases as a result of the foregoing, that Petitioner thus had no choice but to blindly accept the state's plea offer, and that his plea was therefore unknowing and involuntary.  In support of Ground Sixteen, Petitioner alleges that counsel was ineffective in providing him with only limited discovery shortly before trial, and again alleges that Petitioner therefore did not understand the evidence against him and had no choice but to accept the state's plea offer.  Grounds Three, Five, Seven, Ten and Sixteen thus all challenge the knowing and voluntary nature of Petitioner's guilty plea.

Because a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.  Brady v. United States, 397 U.S. 742, 748 (1970).  Factors to be considered in determining whether a guilty plea is knowing and voluntary include whether a defendant (1) enters his guilty plea free from coercion, (2)

---

[13]As set forth *infra*, Florida law requires state trial courts to make certain inquiries regarding DNA evidence prior to accepting a guilty plea, and this implicates whether the plea is knowing and voluntary.  See Fla.R.Crim.P. 3.172; see also Russ v. State, 73 So.3d 178, 200 (Fla. 2011).

understands the nature of the charges, and (3) understands the consequences of his plea. See United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

A guilty plea is, however, open to attack on the ground that counsel did not provide reasonably competent advice. Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716 (1980)(citations omitted); see also Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5th Cir. 1981), cert. denied, 456 U.S. 992 (1982)(waiver of non-jurisdictional defects up to point of guilty plea in proceedings does not extend to claims of ineffective assistance of counsel that attack the voluntariness of the plea). A habeas petitioner can thus overcome the otherwise voluntary and intelligent character of his or her guilty plea only if he or she can establish that the advice she received from counsel was not "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).

Strickland's two-part test applies when a prisoner contends ineffective assistance led him or her to enter "an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474,477 (11th Cir.1990) (citing Hill v. Lockhart, 474 U.S. 52 (1985)). The first part of the Strickland test of course asks whether "counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688. "As a corollary, the appropriate standard for evaluating counsel's pretrial investigation is 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Stano v. Dugger, 921 F.2d 1125, 1149 (11th Cir. 1991)(citations omitted). An attorney also has an obligation "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the

prosecution." <u>Id.</u> at 1149-50.  "Judicial scrutiny of counsel's performance must be highly deferential," however, and the courts should make certain "that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689.

> In the guilty plea context,
>
> the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.

<u>McMann</u>, 397 U.S. at 769-70.  "[C]ounsel [thus] owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). Counsel's advice need not be errorless, and need not involve every conceivable defense; rather, it must simply be within the realm of competence demanded of attorneys representing criminal defendants. <u>Scott v. Wainwright</u>, 698 F.2d 427, 429 (11th Cir. 1983)(citations omitted).

In cases where a guilty plea has been entered, application of <u>Strickland's</u> second prong requires a showing that there is a reasonable probability that, but for counsel's alleged errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill</u>, 474 U.S. at 58.  However, the defendant's "mere allegation that he would have insisted on trial . . . , although necessary, is ultimately insufficient to entitle him [or

her] to relief." <u>U.S. v. Clingman</u>, 288 F.3d 1183, 1186 (10th Cir. 2002); <u>see</u> <u>also</u> <u>Hutchings v. U.S.</u>, 618 F.3d 693 (7th Cir. 2010); <u>U.S. v. Farley</u>,72 F.3d 158, 165 (D.C. Cir. 1995).   Rather, the defendant must generally come forward with some objective evidence that he or she would not have pled guilty.  <u>Hutchings</u>, 618 F.3d at 697.   Indeed, there must be some showing that the decision to proceed to trial would have been rational under the circumstances. <u>See</u> <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).  As such, the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine whether there is a reasonable probability that the petitioner would in fact have insisted on trial.   <u>See</u>, <u>generally</u>, <u>Hill</u>, 474 U.S. at 59; <u>Hutchings</u>, 618 F.3d at 697.  In many guilty plea cases, this inquiry will closely resemble the inquiry that the court would engage in to determine whether the result would have been different had the petitioner proceeded to trial, and will generally include assessment of matters such as the strength of the prosecution's case, any available defenses, the plea colloquy and negotiations, and the potential sentencing exposure.  <u>See</u> <u>Hill</u>, 474 U.S. at 59-60; <u>Farley</u>, 72 F.3d at 165. These issues are relevant precisely because they provide circumstantial evidence of the defendant's state of mind in making the plea.  <u>Miller v. Champion</u>, 262 F.3d 1066, 1073 (10th Cir. 2001); <u>see</u> <u>also</u> <u>Singleton v. Sec'y of Dept. Of Corr.</u>, 2009 WL 975783, *4 (M.D. Fla. 2009 ("The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial.").   A criminal defendant's subjective statements that he would have proceeded to trial can thus only support a finding of prejudice "if combined with probative, objective evidence" that the result would somehow have been different.  <u>Hutchings</u>, 618 F.3d at 697.  The weight of

authority holds that a self-serving and conclusory statement by the defendant is insufficient in itself to show prejudice in the context of guilty pleas. See e.g. United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir. 1990); United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), rev'd on other grounds, 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997); Parry v. Rosemeyer, 64 F.3d 110, 118 (3rd Cir. 1995); United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993); United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993); Bonvillain v. Blackburn, 780 F.2d 1248, 1253 (5th Cir. 1986).

Here, Petitioner cannot establish that his guilty plea was anything other than knowing and voluntary. First, with regard to whether Petitioner entered his guilty plea free from coercion, as set forth above, Petitioner specifically affirmed in open court that he had not been coerced in any way, and that he was pleading guilty because he was in fact guilty. Petitioner points to nothing that would now allow him to establish that his plea was coerced, or anything contrary to his sworn affirmations during the plea colloquy. See Blackledge, 431 U.S. at 73-74 (defendant's sworn statements constitute formidable barrier in subsequent collateral proceedings); DeVille v. Whitley, 21 F.3d at 659 (defendant's solemn declarations in open court carry strong presumption of truthfulness); United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988)("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). Indeed, Petitioner confirmed over and over again in open court that, being fully advised of all the relevant factors, he wanted to take the plea.

Second, with regard to whether Petitioner understood the nature of the charges, Petitioner also affirmed in open court that he had spoken to his attorney regarding the entire matter, and that the understood the case against him. Again, Petitioner fails to

point to anything that would establish that he did not understand what he was being charged with.[14]  See Blackledge, 431 U.S. at 73-74 (regarding presumption of veracity of defendant's sworn statements in open court); DeVille, 21 F.3d at 659 (same); Rogers, 848 F.2d at 168 (same).

Third, with regard to whether Petitioner understood the consequences of his plea, the record reflects that the state trial court discussed the penalties and collateral consequences that Petitioner was facing with him at length, including the fact that Petitioner was being habitualized.[15]  Petitioner also stated that he understood that he was giving up the right to present any DNA evidence that might have exonerated him.  Petitioner further affirmed that he understood the various constitutional rights he was giving up by pleading guilty.  And again, Petitioner points to nothing that would now allow him to establish that he somehow did not understand the consequences of his plea.[16]  See Blackledge, 431 U.S. at 73-74; DeVille, 21 F.3d at 659; Rogers, 848 F.2d at 168.

Finally, with regard to Petitioner's claim that his plea was unknowing and involuntary because it was based on ineffective

---

[14]Petitioner does not seem to allege that he did not understand the nature of the charges.  The court nevertheless addresses this factor in an abundance of caution, in keeping with the dictates of Haines v. Kerner, 404 U.S. 519 (1972), that a pro se litigant's pleadings be construed liberally.

[15]In Ground Two, Petitioner claims trial court error at sentencing for allowing him to enter the plea as a habitual violent felony offender.  In support of this claim, Petitioner alleges, inter alia, that he was not provided with notice of the State's intent to habitualize prior to entry of his guilty plea, as required by state law.  To the extent that Petitioner may mean to allege that his plea was thus somehow unknowing or involuntary because he did not understand its consequences, any such claim is without merit for the reasons set forth in the discussion of grounds Two, Three, and Four below; that is, that the State's failure to comply with Florida's technical statutory notice requirements does not render a plea unknowing or involuntary where the defendant had actual notice of the intent to habitualize, and of those consequences.

[16]Again, Petitioner does not seem to allege that he did not understand the consequences of his plea, but the court nevertheless addresses this factor in keeping with the rule that a pro se litigant's pleadings be construed liberally.

28

assistance of counsel, Petitioner cannot establish ineffective assistance of counsel in the guilty plea context.[17]

First, Petitioner alleges that counsel allowed Petitioner to accept the state's plea offer without first advising Petitioner that he would be habitualized.  Petitioner further alleges that he never had an "ample" opportunity to discuss his case with counsel, that he never received intelligent advice, that counsel never mentioned the habitual violent felony offender status of "10-20-life," and that he was induced and misled into pleading guilty by counsel's misadvice.  However, Petitioner affirmed during the plea colloquy that he did in fact have time to discuss the case with counsel and understood everything, and fails to allege any misadvice about the case upon which he relied.  Moreover, the record reflects that trial court also discussed Petitioner's habitual violent felony offender status and the sentencing consequences of that with him.  See Barker v. United States, 7 F.3d 629, 633-34 (7th Cir. 1993)(finding no ineffective assistance of counsel because any prejudice caused by counsel's misinformation was cured by the district court's thorough examination of defendant at the change of plea hearing); United States v. Hamm, 2012 WL 3643196, *3 (M.D.Pa. 2012)(any prejudice from earlier, off-the-record prediction by counsel was cured by the court's advisement, and defendant's acknowledgment, regarding applicable

---

[17]The court is cognizant that Petitioner told the court that he was still dissatisfied with counsel's services, despite acknowledging what counsel had done for him, and despite admitting that counsel had reviewed everything with him. The court is also cognizant that Petitioner claims that he felt that he had no choice to accept the plea, because he subjectively believed that counsel was performing deficiently.  However, a criminal defendant's subjective dissatisfaction with counsel does not render a plea unknowing or involuntary. Rather, it is only when the decision to plead guilty is in fact based on ineffective assistance of counsel that a habeas petitioner is entitled to relief. Yordan, 909 F.2d at 477 (Strickland's two-part test applies when a prisoner contends ineffective assistance led to an improvident guilty plea).  And for the reasons set forth below, Petitioner cannot establish that his decision to plead guilty was based on ineffective assistance of counsel.

sentencing designation, advisory guideline range, and maximum sentence permitted by law).

Next, Petitioner alleges that counsel was ineffective in failing to advise him that his prosecution on the two counts alleged in case number F05-4402C violated double jeopardy, and that Petitioner would have otherwise proceeded to trial. However, even assuming counsel was deficient in failing to advise Petitioner that he could not be convicted of both counts in case number F05-4402C,[18] Petitioner would still not be able to establish prejudice. Specifically, as the record reflects, Petitioner was still subject to the same exact sentence on the one count of which he remains convicted in case number F05-4402C.[19] Petitioner thus cannot establish any objective factual circumstances under which a rational defendant would not have pled guilty.

Finally, Petitioner alleges that counsel was ineffective in never communicating with Petitioner in any material aspect, never providing Petitioner with any discovery in numerous cases, and in providing Petitioner with only limited discovery shortly before trial in case number F05-4402C. Petitioner further alleges that counsel never discussed any case strategy with him, never interviewed Petitioner or any of the alleged victims, and that Petitioner therefore never knew nor understood the extent of the facts surrounding his cases or the evidence against him. However, Petitioner affirmed during the plea colloquy that counsel had in fact reviewed everything with Petitioner, including the evidence, potential witnesses, and potential defense strategies. And

---

[18]As set forth in the court's Order for Supplemental Response (DE#21), the State conceded during Petitioner's 3.850 proceedings that Petitioner's conviction for one count of armed home-invasion robbery and a second count of armed robbery in case number F05-4402C violated double jeopardy.

[19]As further set forth in the court's Order for Supplemental Response, Petitioner's judgment and sentence as to the count of armed home-invasion robbery in case number F05-4402C remained intact, as did the judgments and sentences in all the other cases that were part of the global plea.

Petitioner further affirmed that, as a result, Petitioner did in fact have an understanding of the case against him.  See Blackledge, 431 U.S. at 73-74 (regarding presumption of veracity of defendant's sworn statements in open court); DeVille, 21 F.3d at 659 (same); Rogers, 848 F.2d at 168 (same).  Moreover, Petitioner fails to explain why anything would have been different if he had reviewed additional discovery or had more time, or what he understands now about the evidence that would have caused a rational defendant to proceed to trial.  Again, Petitioner thus cannot establish any objective factual circumstances under which a rational defendant would not have pled guilty.

In sum, the record reflects that counsel competently investigated and prepared the matter, and discussed it fully with Petitioner.  Petitioner fails to allege what else counsel could have done that would have yielded anything that would have changed his advice to Petitioner.  Petitioner was charged with numerous violent felonies in multiple cases, and the state had a variety of evidence against him.  However, Petitioner fails to allege the existence of any viable defenses, and the record reveals none.  And it is undisputed that, if convicted, Petitioner was facing life in prison.  Petitioner thus cannot establish any objective factual circumstances under which a rational defendant would not have pled guilty in this case, and would instead have insisted on proceeding to trial.  Therefore, Petitioner cannot overcome the knowing and voluntary nature of his plea based on his allegations of ineffective assistance of counsel.  See Padilla, 559 U.S. at 372 (requiring some showing that decision to proceed to trial would have been rational under the circumstances); Hutchings, 618 F.3d at 697 (defendant must generally come forward with some objective evidence that he or she would not have pled guilty); Clingman, 288 F.3d at 1186 (mere allegations that defendant would have proceeded to trial insufficient to establish prejudice); Miller, 262 F.3d at

31

1073 (same); <u>Arvanitis</u>, 902 F.2d at 494 (same); <u>LaBonte</u>, 70 F.3d at 1413 (same); <u>Parry</u>, 64 F.3d at 118 (same); <u>Gordon</u>, 4 F.3d at 1571 (same); <u>see also</u> <u>Saranchak v. Beard</u>, 616 F.3d 292, 309-11 (3rd Cir. 2010)(defendant not prejudiced by counsel's alleged deficient performance in failing to investigate where state presented overwhelming evidence of guilt); <u>In re Sealed Case</u>, 488 F.3d 1011, 1020 (D.C. Cir. 2007)(defendant who pled guilty to single count could not establish prejudice where conviction at trial on that count pled to carried mandatory life sentence); <u>Ceja v. Stewart</u>, 97 F.3d 1246, 1255 (9th Cir. 1996)(rejecting claim of ineffective assistance where defendant failed to explain what compelling evidence additional investigation would have unearthed that would have negated evidence of guilt); <u>Singleton</u>, 2009 WL 975783, at *4 (the best way to evaluate whether a habeas petitioner would have insisted on going to trial is to determine whether viable defenses existed).

Based on the foregoing, the state court's disposition of Petitioner's claim that his plea was unknowing and involuntary is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, nor did it result in the application of <u>Strickland</u> to the facts of this case in an objectively unreasonable manner.  Consequently, Petitioner is not entitled to relief on this claim.  28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. 362, 405-06; <u>Bell</u>, 535 U.S. at 699.

*Petitioner's Grounds for Relief as Set Forth in the Petition*

<u>Ground One</u>

In <u>Ground One</u>, Petitioner claims "Ineffective assistance of counsel, failing to investigate petitioner mental health history. In violation of the Fifth, Sixth, and Fourteenth Amendment United States Constitution and the Florida Constitutions."  In support of this claim, Petitioner alleges that, prior to entry of his guilty plea, he informed counsel of that he had depression and other

illnesses and was taking medication, and that counsel failed to pursue this issue.  This claim is waived by Petitioner's knowing and voluntary guilty plea.  Tollett, 411 U.S. at 267;; Bohn, 956 F.2d at 209; Bradbury, 658 F.2d at 1087.  Moreover, these allegations directly contradict Petitioner's sworn statements at the plea colloquy that he had no mental health issues and was not taking any medication for mental health illnesses.  See Blackledge, 431 U.S. at 73-74 (regarding presumption of veracity of defendant's sworn statements in open court); DeVille, 21 F.3d at 659 (same); Rogers, 848 F.2d at 168 (same).  Regardless, Petitioner fails to allege what any investigation into his mental health history would have yielded that would establish any reasonable probability that the outcome of the proceeding would have been different.  See Ceja, 97 F.3d at 1255 (rejecting claim of ineffective assistance where defendant failed to explain what compelling evidence additional investigation would have yielded); see, also, Strickland, 466 U.S. at 694 (to establish prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Based on the foregoing, the state court's disposition of this claim did not result in the application of Strickland to the facts of this case in an objectively unreasonable manner.  Consequently, Petitioner is not entitled to relief on this claim.  See Bell, 535 U.S. at 699.

Grounds Two, Three and Four

In Ground Two, Petitioner claims "Trial court error at sentencing hearing for allowing petitioner to enter state negotiate plea as Habitual Violent Felony Offender this is a violation to petitioner 'due process'; Sixth and Fourteenth Amendments of the United States Constitution, and the Florida Constitution."  In Ground Three, Petitioner claims "Ineffective assistance of counsel,

"denial of due process', for allowing petitioner to receive legally insufficient/unlawful sentence enhancement of section (775.084(3)(a) Habitual Violent Felony Offender). In violation of petitioner Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions." In Ground Four, Petitioner claims "Denial of due process were petitioner received legally insufficient/unlawful sentence, were state never provided written notice of its actual intention to seek an Habitual Violent Felony Offender sentence. State is in violation of petitioner 'due process', Sixth and Fourteenth Amendment of The United States Constitution and the Florida Constitutions." In support of all of these claims Petitioner alleges that the State failed to serve either him or counsel with written notice of its intent to habitualize, as required by state law. In support of Ground Two, Petitioner also alleges that the trial court sentenced him without this required notice, without a presentence investigation report, and without any certified copies of his prior convictions. In support of Ground Three, Petitioner further alleges that counsel failed to object to the enhancement on this basis. Petitioner makes no additional factual allegations in support of Ground Four.

Florida law requires that a criminal defendant and the defendant's attorney be served with written notice of the State's intent to habitualize prior to entry of guilty plea or imposition of sentence. §775.084, Fla.Stat; see, also, State v. Blackwell, 661 So.2d 282 (1995); Ashley v. State, 614 So.2d 486 (1993); Massey v. State, 589 So.2d 336 (Fla. 1st DCA 1991). Florida's statutory written notice requirement of the State's intent to habitualize is designed to ensure that a criminal defendant's constitutional rights are not violated. See Ashley, 614 So.2d at 488-89 (explaining that the notice requirement ensures that the defendant's plea is knowing and voluntary by, among other things, ensuring that the defendant is apprised of increased maximum

penalties and additional collateral sentencing consequences); Massey, 589 So.2d at 337-38 (stating that the notice requirement is a matter of due process of law, and that its purpose is to ensure that a criminal defendant is notified that the state will seek to have him sentenced as a habitual offender).

The lack of any notice whatsoever of the State's intent to habitualize may violate due process. See Massey, 589 So.2d at 337. However, lack of written notice, when actual notice is given, does not. Id.; see also United States v. Martinez, 30 Fed.Appx. 900, 908 (10th Cir. 2002)(due process does not require that the government provide formal notice of its intention to enhance a criminal defendant under Armed Career Criminal Act)(collecting cases). As such, a technical violation of Florida's statutory habitual violent felony offender procedural scheme, standing alone, does not violate a defendant's right to due process. Massey, 661 So.2d at 339 n.7 ("the term 'illegal' . . . must mean there was a violation of due process. A sentence is not illegal simply because [the] statute was violated").[20]  Moreover, the state's technical failure to comply with the statutory notice requirement, itself, does not even provide a basis for relief from a habitual violent felony offender sentence under Florida law.  See Id. at 339 (denying relief because there was no contention that the habitual violent felony offender sentence imposed was a miscarriage of justice due to any lack of notice; the argument concerned only non-compliance with the statutory form of notice).

Here, even assuming the State did not technically comply with Florida's statutory service requirements, there record is clear

---

[20]Similarly, the state's failure to serve written notice pursuant to the Florida statute, where notice is otherwise provided, does not render a plea unknowing or involuntary.  See Blackwell, 661 So.2d at 284 (holding that defendants received adequate notice of the possibility that they might qualify for treatment as habitual offenders, despite state's failure to comply with statutory notice requirements).

that Petitioner had more than ample notice of the State's intent to designate him as a habitual violent felony offender under state law, and that Petitioner was duly advised regarding the consequences of that designation.   And Petitioner admitted his prior convictions, and admitted that he qualified.   Indeed, Petitioner still does not deny that he has the requisite prior convictions that qualify him as a habitual violent felony offender under state law.   Rather, all of Petitioner's claims raised in these grounds are predicated solely upon State's technical non-compliance with the procedural requirements of Florida law.[21]   As such, Petitioner fails to state any claim for a denial of his due process rights, see Massey at 338-339, and fails to state a a claim for ineffective assistance of counsel.  See Knowles v. Mirzayance, 129 S.Ct. 1411, 1422 (2009)(the law does not require counsel to raise every available non-frivolous defense); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994)("[I]t is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance" of counsel); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992)(failure to raise

---

[21]It is well-settled that federal habeas relief is available to correct only federal constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief).   There is a significant difference between state procedures to resolve a federal issue, and the merits of the federal issue itself. A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution.  See Barclay v. Florida, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983)("Mere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution")(citations omitted)); Engle v. Isaac, 456 U.S. 107, 119-120, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983)(procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989)(sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987)(jury instruction).   Therefore, to the extent that Petitioner's claims are predicated upon an alleged technical violation of Florida law, they are not cognizable.

meritless issues cannot prejudice a client); <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990)(counsel is not required to raise meritless issues).

Based on the foregoing, the state court's disposition of these claims is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, nor did it result in the application of <u>Strickland</u> to the facts of this case in an objectively unreasonable manner. Consequently, Petitioner is not entitled to relief on these claims. 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. 362, 405-06; <u>Bell</u>, 535 U.S. at 699 (to obtain habeas relief, Petitioner must show state court applied <u>Strickland</u> in an objectively unreasonable manner).

<u>Ground Five</u>

In <u>Ground Five</u>, Petitioner claims "Involuntary Plea due to counsel misadvising petitioner to plea "guilty on all counts" petitioner "due process", Sixth and Fourteenth Amendment of the United States Constitution and the Florida Constitutions." Petitioner does not make any additional factual allegations in support of this claim other than those set forth above that challenge the knowing and voluntary nature of his plea. This claim thus fails in its entirety for the reasons set forth above.

<u>Ground Six</u>

In <u>Ground Six</u>, Petitioner claims "Lack of jurisdiction of the trial court to enter judgement without considering whether petitioner should have been classified as a "youthful offender" under (§958.04(2) Florida Statues (1981). In violation of petitioner "due process"; Sixth and Fourteenth Amendment of The United States Constitution and Florida Constitutions." In support of this claim, Petitioner alleges that the trial court erred in not considering whether Petitioner should have been classified as a youthful offender because he was younger than 21 years old at the time of his offense, and that his birth date is March 29, 1985).

As set forth above, it is well-settled that mere errors of state law that do not infringe on a defendant's federal constitutional rights provide no basis for federal habeas corpus relief.  See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67–68; Barclay, 463 U.S. at 958–659.  A claim for relief that does in fact only raise issues of state law is thus not cognizable on federal habeas review, even where it is "couched in terms of equal protection and due process." Brannan 861 F.2d at 1508.

Here, Petitioner's allegations regarding the trial court's failure to consider whether he should have been classified as a youthful offender do not rise for some other reason to the level of a denial of rights protected by the United States Constitution. See Jackson v. State, 137 So.3d 470, 476 (Fla. 4th DCA 2014), rev. granted, 147 So.3d 523 (Fla. 2014)(stating that "there is  there is no fundamental right to a youthful offender sentence" in rejecting Equal Protection and Due Process challenges to Florida's Youthful Offender Act).[22]  As such, they fail to state a cognizable claim for federal habeas corpus relief.  See Estelle, 502 U.S. at 67–68; Barclay, 463 U.S. at 958–659; see, also, Brannan 861 F.2d at 1508 (sentencing guidelines context).  Regardless, this claim is without merit.  As set forth above, Petitioner knowingly and voluntarily entered a negotiated plea, admitted that he qualified as a habitual violent felony offender, and agreed to be sentenced as such.

---

[22]The Florida Youthful Offender Act vests the state court with discretion to sentence an eligible adult defendant (between 18 and 21) as a youthful offender. Fla. Stat. § 958.04(1). If the state court decides to sentence a defendant as a youthful offender, "[i]n lieu of other criminal penalties authorized by law," the court is given an array of alternative sentencing options, including probation, placement in a community control program, incarceration in county facilities, restitution centers or public and private community residential facilities, and sentences split between these options. Id. § 958.04(2)(a)-(c). However, the state court may not commit a youthful offender to the custody of the Florida Department of Corrections for more than six years. Id. § 958.04(2)(d).

Based on the foregoing, the state court's disposition of this claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts.  Consequently, Petitioner is not entitled relief on this claim.  28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 405-06.

<u>Ground Seven</u>

In <u>Ground Seven</u>, Petitioner claims "Lack of jurisdiction on the trial court to enter the judgement and sentence without first conducting a "D.N.A." Evidence inquiry before accepting petitioner plea as guilty (Under Fla. R. Crim. P. Rule 3.172). In violation of petitioner "due process"; Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions." In support of this claim, Petitioner alleges that the trial court erred in accepting Petitioner's guilty plea without first conducting a "DNA evidence inquiry."[23]  More specifically, Petitioner alleges that physical items that could have been tested for DNA evidence did in fact exist in case number F05-6478.  This claim thus does not appear to relate to case number F05-4402C, and is time barred for the reasons set forth in the court's Order for Supplemental Response (DE#21).[24]

_____

[23]Florida Rule of Criminal Procedure 3.172(d) provides:

(d) DNA Evidence Inquiry.  Before accepting a defendant's plea of guilty or nolo contendere to a felony, the judge must inquire whether counsel for the defense has reviewed the discovery disclosed by the state, whether such discovery included a listing or description of physical items of evidence, and whether counsel has reviewed the nature of the evidence with the defendant. The judge must then inquire of the defendant and counsel for the defendant and the state whether physical evidence containing DNA is known to exist that could exonerate the defendant. If no such physical evidence is known to exist, the court may accept the defendant's plea and impose sentence. If such physical evidence is known to exist, upon defendant's motion specifying the physical evidence to be tested, the court may postpone the proceeding and order DNA testing.

[24]Regardless, even if Petitioner means to allege that physical evidence containing DNA was known to exist in case number F05-4402C, <u>see</u> <u>Chavez</u>, 647 F.3d at 1061 (federal district courts are not obligated to cull the evidentiary records themselves, nor to ferret out delectable facts for a habeas petitioner),

<u>Ground Eight</u>

In <u>Ground Eight</u>, Petitioner claims "Petitioner sentence is illegal "denial of due process"; Illegal enhancement of section (§775.087(1)) and under (17112 West's F.S.A. STD. CRIM. JURY. INSTR. 15.1) and section (§813.13 FLA. STAT.) State is in violation of petitioner "due process", his Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions."  In support of this claim, Petitioner alleges that the State committed reversible error when imposing the various 10-year mandatory minimum sentences upon him, as well in charging him with armed robbery, when the State did not really know what Petitioner carried during commission of the offense at issue, and that the State did not prove the deadly-weapon element of the offense in open court.

This claim wholly without merit.  As set forth above, Petitioner entered a knowing and voluntary plea to the armed robbery charge in case number F05-4402C, and admitted his guilt. This includes his admission of guilt to use of a deadly weapon during the commission of the robbery that rendered it an armed robbery, and that subjected him to the 10-year mandatory minimum.[25]

_____

this claim is without merit.  Specifically, as set forth above, it is true that non-compliance with the Florida rule at issue may under certain circumstances implicate the knowing and voluntary nature of a plea.  <u>See</u> Fla.R.Crim.P.3.172; <u>Russ</u>, 73 So.3d at 200.  However, as further set forth above, technical non-compliance with a state rule of procedure designed to protect a constitutional right, standing alone, does not provide a basis for relief when the right to be protected has not been violated.  Here, the record reflects that Petitioner knowingly and voluntarily waived his right to any DNA testing as part of his negotiated guilty plea.

    [25]Petitioner was charged with robbery in violation of Florida Statute §812.13 in case number F05-4402C, as well as in several of his other cases. Petitioner's reference to Florida Statute §813.13 thus appears to be a scrivener's error.  Florida Statute §775.087 to which Petitioner makes reference provides for reclassification and enhanced penalties for certain felonies, when a weapon or firearm is used during their commission.  To the extent that Petitioner may mean to challenge his convictions and sentences in his other cases wherein he pled guilty and also received to the 10-year mandatory minimum, those claims are time-barred for the reasons set forth in the court's order for supplemental response [DE#21].  But regardless, those claims would fail for the same reason; that is, by pleading guilty, Petitioner also admitted his guilt to the use of a deadly weapon during the commission of those felonies.

Based on the foregoing, the state court's disposition of this claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts. Consequently, Petitioner is not entitled to relief on this claim. 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 405-06.

<u>Ground Nine</u>

In <u>Ground Nine</u>, Petitioner claims "Petitioner was denied the right to appellate counsel. Sixth and Fourteenth Amendment of the United States Constitution and the parallel authority of Article I § 9 and article II § 16 of the Florida Constitution, guarantee indigent petitioner's in a criminal prosecution the right to appointed counsel on his criminal trial and first appeal as of right." In support of this claim, Petitioner alleges that he never had the benefit of appointed counsel to represent him in his direct appeal. Specifically, Petitioner alleges that Florida's Third District Court of Appeal granted his petition for belated appeal in case number F05-4402C and declared him insolvent, yet failed to appoint Petitioner counsel for that appeal. Petitioner also alleges that he was never advised of his right to appointed counsel on appeal, and that he therefore proceeded <u>pro se</u>. Respondent does not deny any of these factual allegations.[26]

---

[26]As noted above, the undisputed procedural history of Petitioner's underlying criminal case is set forth in the court's Order for Supplemental Response (DE#21). Nevertheless, it bears setting forth here what can be determined to have occurred from the limited record that has been provided, as well as from the Florida Third District Court of Appeals' on-line docket. Specifically, Petitioner filed a <u>pro se</u> petition for belated appeal in case number F05-4402C (DE#13, Exh.Q; www.3dca.flcourts.org, case no. 3D09-1552). That petition was assigned case number 3D09-1552, and granted. <u>Id.</u> Petitioner's direct appeal then proceeded under case number 3D09-1691 (DE#13, Exh.R-W; www.3dca.flcourts.org, case no. 3D09-1691). In June of 2009, Petitioner was declared insolvent (www.3dca.flcourts.org, case no. 3D09-1691). In January of 2010, Petitioner was directed to file an initial brief, which he did, <u>pro se</u> (DE#13, Exh.R; www.3dca.flcourts.org, case no. 3D09-1691). The appeal then continued with Petitioner proceeding <u>pro se</u>, and was ultimately resolved against Petitioner on the merits (DE#13, Exh.R-W; www.3dca.flcourts.org, case no. 3D09-1691); <u>Obando v. State</u>, 53 So.3d 234 (Fla. 3rd DCA 2010).

It is well-settled that a criminal defendant has a constitutional right to counsel on a first appeal. See Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)(holding that states must appoint counsel on a prisoner's first appeal); Penson v. Ohio, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)(stating that Douglas recognized the constitutional right of a criminal appellant to counsel on a first appeal); Evitts v. Lucey, 469 U.S. 387, 397, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)(stating that the promise of Douglas is that a criminal defendant has a right to counsel on appeal).  In recognizing the right to counsel on appeal, the Supreme Court has "expressly relied not only on the Fourteenth Amendment's Equal Protection Clause, which . . . prohibits disadvantaging indigent defendants in comparison to those who can afford to hire counsel themselves, but also on its Due Process Clause and its incorporation of Sixth Amendment standards." Jones v. Barnes, 463 U.S. 745, 756-57, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)(citations omitted).

In Douglas v. California, supra, the Supreme Court held that a procedure in which an appellate court appointed counsel if in their opinion it would be helpful was an inadequate substitute for guaranteed representation.  Penson, 488 U.S. at 80.  Four years later, in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 493 (1967), the Court held that a court of appeals may proceed to consider an appeal on the merits without the assistance of counsel, if certain safeguards are satisfied.[27]  A state court's

---

[27]Pursuant to Anders, appointed counsel is first required to conduct "a conscientious examination" of the case.  386 U.S. at 744.  If he or she is then of the opinion that the case is wholly frivolous, counsel may request leave to withdraw.  Id.  The request "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."  Id. Once the appellate court receives this brief, it must then itself conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous."  Id.  Only after this separate inquiry, and only after the appellate court finds no nonfrivolous issue for appeal, may the court proceed to consider

consideration of an appeal on the merits in violation of the dual protections afforded by Douglas and Anders amounts to a denial of counsel, leaving the prisoner "completely without representation during the appellate court's decisional process." Penson, 488 U.S. at 88.  When this occurs, prejudice is presumed, and the error cannot be considered harmless.  Id. at 85-86.

Here, the limited record contains no explanation whatsoever regarding why appellate counsel was never assigned, and it is undisputed that Petitioner was never informed of this right. Indeed, Respondent concedes that appellate counsel was never provided, and makes a wholly conclusory and seemingly disingenuous implied waiver argument.  Specifically, Respondent argues that Petitioner should have raised the denial of his right to appellate counsel as part of the appeal itself, and that "if [Petitioner] did not have appellate counsel and qualified as indigent . . ., a request should have been made at that time" (DE#24, p.48).

Respondent cites no authority whatsoever for the proposition that an indigent criminal defendant can somehow waive his or her constitutional right to appellate counsel by failing to request it, and the court is aware of none.  Indeed, as the Supreme Court stated in laying out the standard of proof of waiver of the right to counsel, "[i]t has been pointed out that courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464—465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)(internal quotations and citations omitted).  Rather, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer.

the appeal on the merits without the assistance of counsel.  Id.  On the other hand, if the court disagrees with counsel, and concludes that there are nonfrivolous issues for appeal, "it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."  Id.

Anything less is not a waiver." <u>Carnley v. Cochran</u>, 369 U.S. 506, 516-17, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); <u>see also</u> <u>Uveges v. Commonwealth of Pennsylvania</u>, 335 U.S. 437, 441, 69 S.Ct. 184, 185, 93 L.Ed. 127 (1948)(Constitution grants protection against criminal proceedings without the assistance of counsel; counsel must be furnished whether or not the accused requested the appointment of counsel).   Presuming waiver based on Petitioner's failure to request appellate counsel would thus be impermissible under the facts and circumstances of this case.   <u>See Carnley</u>, 369 U.S. 506, 516-17, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)(rejecting implied waiver argument based on Petitioner's alleged failure to request counsel where transcript revealed no instruction as to the constitutional right); <u>see also</u> <u>Brewer v. Williams</u>, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977)("[T]he proper standard to be applied in determining the question of waiver [is] that it [is] incumbent upon the State to prove an intentional relinquishment or abandonment of a known right . . . That standard has been reiterated in many cases.  We have said that the right to counsel does not depend upon a request by the defendant . . . , and that courts indulge in every reasonable presumption against waiver.")(internal quotations and citations omitted).

Based on the foregoing, the state court's disposition of this claim is contrary to, or involved the unreasonable application of, clearly established federal law.   Consequently, Petitioner is entitled to federal habeas corpus relief on this claim.  28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 405-06.

<u>Ground Ten</u>

In <u>Ground Ten</u>, Petitioner claims "The denial of effect assistance counsel, counsel was ineffective for failing to protect the petitioner's right to "due process" of law under Sixth and; Fifth and Fourteenth Amendment of the United States Constitution and Florida Constitutions."  In support of this claim, Petitioner

alleges that counsel was ineffective in failing to advise him that
his prosecution on the two counts alleged in case number F05-4402C
violated double jeopardy and that, but for that failure to advise,
Petitioner would have proceeded to trial.  These allegations thus
amount only to a claim that Petitioner's plea was unknowing and
involuntary, which fails in its entirety for the reasons set forth
above.

Ground Eleven

    In Ground Eleven, Petitioner alleges "Counsel was ineffective
for failing/abandoning the petitioner previously filed motions to
suppress statements illegally obtained, and motion to suppress
identification testimony. In violation of the Fifth, Sixth and
Fourteenth Amendment of the United States Constitution and Florida
Constitutions." In support of this claim, Petitioner alleges that
counsel abandoned motions to suppress in Petitioner's other case
numbers (i.e., not in case number F05-4402C).  These claims are
time-barred for the reasons set forth in the court's Order for
supplemental Response (DE#21).

Ground Twelve

    In Ground Twelve, Petitioner alleges "Counsel was ineffective
for failing to subject the state's case to meaningful adversarial
testing process, which rendered petitioner plea involuntary, in
violation of Fifth, Sixth and Fourteenth Amendment of the United
States Constitution and Florida Constitutions." In support of this
claim, Petitioner alleges that counsel never communicated with
Petitioner in any material aspect, never provided Petitioner with
any discovery related to numerous cases, never discussed any case
strategy with Petitioner, and never interviewed Petitioner or any
of the alleged victims.  Petitioner further alleges that he never
knew the extent of the facts and evidence surrounding his cases as
a result of the foregoing, that Petitioner thus had no choice but

to blindly accept the state's plea offer, and that his plea was therefore unknowing and involuntary.

To the extent that Petitioner means to claim that his pleas in his other case numbers were unknowing and involuntary, those claims are time-barred for the reasons set forth in the court's order for supplemental response (DE#21). To the extent that Petitioner means to claim that his plea in case number F05-4402C was unknowing and involuntary, that claim fails for the reasons set forth in the discussion above.

In support of <u>Ground Twelve</u>, Petitioner also alleges that counsel was ineffective in failing to object to the state trial court's failure to require that a factual basis be entered into the record during the plea colloquy. To the extent that Petitioner means to challenge his convictions and sentence in his other case numbers on this basis, those claims are time-barred for the reasons set forth in the court's order for supplemental response (DE#21).[28] With regard to case number F05-4402C, the court presumes that Petitioner means to argue that, had counsel objected, his plea would not have been accepted by the trial court for lack of a sufficient factual basis (i.e., as opposed to arguing that counsel's failure in this regard rendered Petitioner's plea unknowing and involuntary). <u>Graham</u>, 89 F.3d at 79 (a <u>pro</u> <u>se</u> habeas petitions should be interpreted to raise strongest arguments that they suggest).[29]

The Supreme Court has instructed that a judge accepting a plea must determine whether "the conduct which the defendant admits

_____

[28]It bears noting, however, that any challenge to Petitioner's convictions and sentences in his other cases on this basis would nevertheless fail for the same reason that it fails with regard to case number F05-4402C.

[29]Regardless, even if Petitioner means to allege that this failure on counsel's part rendered his plea unknowing and involuntary, any such claim would fail because, as set forth *infra*, counsel cannot be deemed to have been ineffective in this regard.

constitutes the offense ... to which the defendant has pleaded guilty." <u>McCarthy v. United States</u>, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *accord* Fed.R.Crim.P. 11(f); see <u>United States v. Terzado–Madruga</u>, 897 F.2d 1099, 1125 (11th Cir. 1990); <u>Dismuke v. United States</u>, 864 F.2d 106, 107 (11th Cir. 1989). The purpose of this requirement is to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading. <u>McCarthy</u>, 394 U.S. at 467, 89 S.Ct. at 1171. The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty. <u>United States v. Owen</u>, 858 F.2d 1514, 1517 (11th Cir. 1988)(*per curiam*). Florida law is consistent in this regard. <u>See Williams v. State</u>, 316 So.2d 267, 271 (Fla. 1975)("The sole purpose of the [requirement to establish a factual basis] is to determine the accuracy of the plea, thereby avoiding a mistake. The trial judge ... is to ensure that the facts of the case fit the offense with which the defendant is charged.") The trial judge's task "is not to pass on the sufficiency of the evidence to support a conviction, but rather to determine that a 'factual basis' exists.... This means that the court makes inquiry as to the facts sufficient to satisfy itself that a *prima facie* basis exists for the charge against the defendant."[30] <u>Wright v. State</u>, 376 So.2d 236, 238 (Fla. 1st DCA 1979).

Here, as set forth above, the state trial court found that the Informations were sufficient to state *prima facie* cases of guilt (DE#13, Exh.N, p.24). Indeed, review of the Informations reveals

---

[30]Rule 3.172(a), Florida Rules of Criminal Procedure, requires that the trial judge determine that a factual basis for a nolo contendere plea exists before accepting the plea. This rule provides no requirement that the trial judge recite the factual basis at the plea hearing. "Failure to follow [this procedure] shall not render a plea void absent a showing of prejudice." Fla.R.Crim.P. 3.172(j).

that there was a basis for this finding, and Petitioner does not
even allege that there was no factual basis for his plea.
Petitioner's sole argument, rather, is that counsel was ineffective
in failing to object to the state trial court's failure to require
that a factual basis be entered into the record during the plea
colloquy.   However, as set forth above, there is no such
requirement.  Wright, 376 So.2d at 238.  The trial judge need only
be satisfied that a *prima facie* case exists against the defendant.
Id.  And here, that is precisely what occurred.  Stated another
way, the requirement that there be a sufficient factual basis for
Petitioner's pleas was satisfied in this case.  Counsel thus cannot
be deemed ineffective for failing to object on the basis that it
was not.  Knowles, 129 S.Ct. at 1422 (counsel need not raise every
available non-frivolous defense); Chandler, 240 F.3d at 917
(counsel not ineffective for failing to raise a non-meritorious
objection); Bolender, 16 F.3d at 1573 (11th Cir. 1994)(failure to
raise non-meritorious issues does not constitute ineffective
assistance); Winfield, 960 F.2d at 974 (failure to raise meritless
issues cannot prejudice a client); Card, 911 F.2d at 1520 (counsel
not required to raise meritless issues); Iron Wing, 34 F.3d at 665
(movant not prejudiced by counsel's failure to file motion to
suppress that would have been denied); James, 24 F.3d at 27
(failure to make futile motions does not constitute ineffective
assistance); Hart, 933 F.2d at 83 (counsel not required to waste
court's time with futile or frivolous motions).

Based on the foregoing, the state court's disposition of this
claim did not result in the application of Strickland to the facts
of this case in an objectively unreasonable manner.  Consequently,
Petitioner is not entitled to relief on this claim.  See Bell, 535
U.S. at 699.

48

Ground Thirteen

In Ground Thirteen, Petitioner claims "Counsel was ineffective for failing to file a motion to withdraw the petitioner plea, in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions." In support of this claim, Petitioner alleges that counsel failed to file a motion to withdraw his guilty plea on the basis that Petitioner could not be sentenced as a habitual violent felony offender because he never received notice of the enhancement. However, for the reasons set forth in the discussion of grounds Two, Three and Four above, Petitioner could be sentenced as a habitual violent felony offender under the facts and circumstances of this case, even assuming that the State failed to technically comply with Florida's statutory notice requirements. Counsel thus cannot be deemed ineffective for having failed to file a motion to withdraw Petitioner's guilty plea on this basis. Chandler, 240 F.3d at 917 (counsel not ineffective for failing to raise a non-meritorious objection); Bolender, 16 F.3d at 1573 (11th Cir. 1994)(failure to raise non-meritorious issues does not constitute ineffective assistance); Winfield, 960 F.2d at 974 (failure to raise meritless issues cannot prejudice a client); Card, 911 F.2d at 1520 (counsel not required to raise meritless issues); Iron Wing, 34 F.3d at 665 (movant not prejudiced by counsel's failure to file motion to suppress that would have been denied); James, 24 F.3d at 27 (failure to make futile motions does not constitute ineffective assistance); Hart, 933 F.2d at 83 (counsel not required to waste court's time with futile or frivolous motions).

Based on the foregoing, the state court's disposition of this claim did not result in the application of Strickland to the facts of this case in an objectively unreasonable manner. Consequently, Petitioner is not entitled to relief on this claim. Bell, 535 U.S. at 699.

Ground Fourteen

In Ground Fourteen, Petitioner claims "Counsel was ineffective for advising the petitioner to accept the state's negotiated plea offer on case number F05-6482, in violation of the Fifth, Sixth and Fourteenth Amendment of the United States Constitution and Florida Constitutions." Petitioner's factual allegations in support of this claim relate only to case number F05-6482. This claim is thus time barred for the reasons set forth in this court's Order for Supplemental Response (DE#21).

Ground Fifteen

In Ground Fifteen, Petitioner claims "Trial court was without jurisdiction for entering judgment and sentence without at first ordering a Nelson hearing, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and the Florida Constitution." In support of this claim, Petitioner alleges that he continuously told the trial court he was not satisfied with counsel, and that the trial court did not "prepare a proper Nelson inquiry as the Nelson rule required."

In Nelson v. State, 274 So.2d 256, 258 (Fla. 4th DCA 1973), Florida's Fourth District Court of Appeal set forth "the procedure which the trial court should follow for the purpose of protecting an indigent's Sixth Amendment right to counsel in a criminal prosecution where before the commencement of the trial the Defendant moves to discharge appointed counsel." 274 So.2d at 258. The court held that trial courts must make certain inquiries when an indigent defendant appears to desire to discharge his court-appointed counsel. Id. at 258-259. "If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant." Id. at 258-259.

The United States Supreme Court has never defined what procedure should be used when an indigent defendant alleges that his court-appointed attorney is not competent to represent him. See Ortiz v. McNeil, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D.Fla. December 2, 2010)("No case has been cited for the proposition that the federal constitution mandates the Nelson procedure, and this court has found none."); see also United States v. Garey, 540 F.3d 1253 (11th Cir. 2008).  And as previously set forth, federal habeas corpus relief is available to correct only federal constitutional injury.  See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68; Barclay, 463 U.S. at 958-659. Petitioner's claim that the trial court failed to conduct a sufficient inquiry as required by Nelson in addressing his motion to discharge counsel is thus solely a matter of state procedural law, not a matter of federal Constitutional law.  See, e.g., Ortiz v. Sec'y, Dep't of Corr., No. 8:11-CV-2410-T-33MAP, 2013 WL 787656, at *11 n. 7 (M.D.Fla. March 4, 2013); Bembo v. Tucker, No. 3:11cv132/MCR/EMT, 2012 WL 6213455, at *8 n. 8 (N.D.Fla. October 29, 2012), Report and Recommendation Adopted by WL 6214024 (N.D.Fla. Dec 13, 2012); Maye v. Tucker, No. 4:08-cv-577-SPM/GRJ, 2011 WL 6817938, at *8-9 (N.D.Fla. Oct. 26, 2011); Report and Recommendation Adopted By, 2011 WL 6817929 (N.D.Fla. Dec.28, 2011); Allen v. Buss, No. 4:09cv85-MP/W CS, 2011 WL 2532766, at *3 (N.D.Fla. May 25, 2011), Report and Recommendation Adopted By, 2011 WL 2531189 (N.D.Fla. June 24, 2011); Kimbrough v. Buss, No. 3:08cv552-LAC/MD, 2011 WL 2414879, at *11 (N.D.Fla. May 20, 2011), Report and Recommendation Adopted By, 2011 WL 2374385 (N.D.Fla. June 10, 2011); Ortiz v. McNeil, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D.Fla.

December 2, 2010).    As such, it is not cognizable in this
proceeding.[31]

Ground Sixteen

In Ground Sixteen, Petitioner alleges "Ineffective assistance
of counsel, due to counsel's failure to provide the petitioner with
Discovery and depositions, in violation of petitioner's due
process, his Fifth, Sixth, and Fourteenth Amendments of the United
States Constitution and the Florida Constitution." Petitioner does
not make any additional factual allegations in support of this
claim other than those set forth above that challenge the knowing
and voluntary nature of his plea.  This claim thus fails in its
entirety for the reasons set forth above.[32]

Ground Seventeen

In Ground Seventeen, Petitioner alleges "The cumulative effect
of counsel's numerous errors has deprived the petitioner of his due
process rights to effective assistance of counsel. In violation of
the Fifth, Sixth, and Fourteenth Amendments of the United States
Constitution and the Florida Constitution." In support of these
claims, Petitioner alleges that counsel failed to contact him for
nineteen months after being appointed to Petitioner's case, that
counsel failed to invoke Petitioner's right to a speedy trial, that
counsel failed to investigate three witnesses, and that counsel
failed to investigate allegations that Petitioner "made a taped
statement of his own free will dealing with case no. F05-4402C."

---

[31]State law issues may be reviewed in this federal forum only when the
alleged errors were "so critical or important to the outcome of the trial to
render the entire trial fundamentally unfair."  Tejada, 941 F.2d at 1560.  The
Supreme Court "ha[s] defined the category of infractions that violate
'fundamental fairness' very narrowly." Estelle, 502 U.S. at 352, 110 S.Ct. at
668.  The instant case is not one in which there were such critical errors, if
indeed there were any errors, that a Constitutional violation is apparent.

[32]And to the extent that Petitioner may mean to allege any free-standing
claim of pre-plea ineffectiveness, any such claim is waived by Petitioner's
knowing and voluntary guilty plea.  Tollett, 411 U.S. at 267;; Bohn, 956 F.2d at
209;  Bradbury, 658 F.2d at 1087.

Despite Petitioner's contention that these alleged errors occurred "[d]uring pre-trial proceeding and at plea and sentencing, these allegations only raise claims of pre-plea ineffectiveness. <u>See</u> <u>Campos</u>, 32 F.Supp.2d at 1343 (leniency afforded to <u>pro</u> <u>se</u> pleadings does not require a court to accept conclusory allegations, or factual claims that are internally inconsistent). As such, these claims are waived by Petitioner's knowing and voluntary guilty plea. <u>Tollett</u>, 411 U.S. at 267;; <u>Bohn</u>, 956 F.2d at 209; <u>Bradbury</u>, 658 F.2d at 1087.

Based on the foregoing, the state court's disposition of this claim did not result in the application of <u>Strickland</u> to the facts of this case in an objectively unreasonable manner. Consequently, Petitioner is not entitled to relief on this claim. <u>Bell</u>, 535 U.S. at 699.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and that if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts (hereinafter "Habeas Rules"). Rule 11(a) further provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." <u>Id.</u> Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Habeas Rules.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petitioner's constitutional

claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).  Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  Rose v. Lee, 252 F.3d 676, 684 (4th Cir.2001)(quoting Slack, 529 U.S. at 484).  "Each component of the §2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

Having determined that Petitioner is not entitled to relief on the merits on all but one of his claims, the court considers whether Petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in the claims which the court has determined do not entitle Petitioner to relief.  After reviewing the claims at issue in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of those claims debatable or wrong and none of the issues are adequate to deserve encouragement to proceed further.  Accordingly, a certificate of appealability is not warranted with regard to the claims which the court has determined do not entitle Petitioner to relief.  See Miller-El, 537 U.S. at 336-38; Slack, 529 U.S. at 483-84.

<u>Conclusion</u>

Based upon the foregoing, it is recommended that Petitioner's claims with regard to case numbers F05-6478, F05-6482, F05-8370, F05-7562 and F05-103462 be DISMISSED AS TIME BARRED, and that no certificate of appealability be issued.  With regard to case number F05-4402C, it is recommended that this petition for writ of habeas corpus be conditionally GRANTED based on the denial of Petitioner's right to appellate counsel as claimed in <u>Ground Nine</u>, and that the State either release Petitioner from incarceration, or reinstate his direct appeal within 60 days.  It is further recommended that this petition for writ of habeas corpus be DENIED on all other grounds, and that no certificate of appealability be issued.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report, including any objections to the recommendation that no certificate of appealability be issued.

SIGNED this 16th day of June, 2015.

                                        UNITED STATES MAGISTRATE JUDGE

cc:  Mauricio Obando, <u>Pro Se</u>
     M22358
     Santa Rosa Correctional Institution
     5850 East Milton Road
     Milton, FL 32583

     Brent J. Kelleher, AAG
     Office of the Attorney General
     Department of Legal Affairs
     444 Brickell Ave., Ste. 650
     Miami, FL 33131 ta Rosa Correctional Institution
     5850 East Milton Road
     Milton, FL 32583